UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
-------------------------------------------------------------------X
SUSAN MOZELESKI,

                      Plaintiff,

    v.

MAIN LINE HOSPITALS, INC.,
*individually and d/b/a* THE LANKENAU HOSPITAL;
MICHELLE MACEDON, *individually*; and STACEY
PRICE, *individually*.

                    Defendants.

-------------------------------------------------------------------X

Civil Action No.

**COMPLAINT**

Plaintiff Demands a
Trial by Jury

Plaintiff, SUSAN MOZELESKI, as and for her Complaint against the above Defendants respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Pennsylvania Human Relations Act ("PHRA"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of her age and disability, and retaliated against on the basis of the same.

## JURISDICTION AND VENUE

2. This action involves questions of federal law under the Americans with Disabilities Act and the Age Discrimination in Employment Act.

3. This court has supplemental jurisdiction over the state causes of action, as they arise out of the same nucleus of operative fact.

4. Venue is proper in this district based upon the fact that Plaintiff was employed by Defendants within the County of Montgomery, Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania. Additionally, the events at issue took place in Montgomery County, Pennsylvania within the Eastern District of Pennsylvania.

5. Around March 18, 2020, Plaintiff dual-filed charges with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") against all Defendants as set forth herein.

6. Around March 16, 2021, the EEOC issued Plaintiff her Notice of Right to Sue.

7. This action is being commenced within 90 days of receipt of the EEOC Notice of Right to Sue.

**PARTIES**

8. Plaintiff SUSAN MOZELESKI (hereinafter referred to as "Plaintiff" and/or "MOZELESKI") is seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against and harassed by her employer on the basis of her age and disability, forced to endure a hostile work environment, and retaliated against for reporting and opposing the unlawful discrimination and harassment.

9. Plaintiff MOZELESKI is an individual sixty-four (64) year old female who resides in the County of Delaware within the Commonwealth of Pennsylvania.

10. At all times material, Defendant MAIN LINE HOSPITALS, INC. (hereinafter referred to as Defendant and/or "MLH") was and is a domestic non-profit corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania.

11. At all times material, Defendant MAIN LINE HOSPITALS, INC. conducted and continues to conduct business under the name of THE LANKENAU HOSPITAL.

12. At all times material, Defendant MLH and THE LANKENAU HOSPITAL (hereinafter collectively "LANKENAU") operated a medical facility known as the "Surgicenter" at 100 Lancaster Avenue, Wynnewood, PA 19086.

13. At all times material, Defendant MICHELLE MACEDON (hereinafter referred to as "Defendant" and/or "MACEDON") was employed by Defendant LANKENAU as a Nurse Manager.

14. At all times material, Defendant MACEDON held direct supervisory authority over Plaintiff.

15. At all times material, Defendant STACEY PRICE (hereinafter referred to as "PRICE") was employed by Defendant LANKENAU as the Director of Nursing, Surgical Services.

16. At all times material, Defendant PRICE held supervisory authority over Plaintiff.

## MATERIAL FACTS

17. Around 1988, Plaintiff began working for Defendants.  Throughout her career, Plaintiff progressed through various roles, ultimately becoming Assistant Nurse Manager at Defendant MLH's "Surgicenter" within Lankenau Hospital.

18. Throughout her over thirty (30) years of employment with Defendants, Plaintiff demonstrated a strong work ethic and regularly received positive performance reviews and excellent feedback from the doctors whom she supported reflecting such.

19. Furthermore, Plaintiff excelled in her positions with Defendants despite suffering from a severe hearing disability, which she manages through the use of several accommodations. At all times, Defendants were fully aware of Plaintiff's disability.

20. Around October 2018, Defendant LANKENAU hired new managerial employees in the Surgicenter, including Defendant MACEDON, a younger woman who served as Plaintiff's direct supervisor.

21. From the outset of MACEDON's employment, she frequently harassed and belittled Plaintiff on an ongoing basis without reason to do so.

22. By means of example, MACEDON would regularly nitpick Plaintiff's work without reason to do so, criticize Plaintiff's performance, and publicly chastise Plaintiff for issues that were beyond her control.  Further, around the same time, PRICE even instructed Plaintiff not to speak up about issues that concerned her during Operating Room Management meetings, entirely disregarding MLH's "Open Communication" policy, which concerned Plaintiff so greatly that she separately reported the instruction to Human Resources.

23. PRICE would also make comments about how she was "tired of hearing that Plaintiff's Operating Room [the Surgicenter] was running well" compared to other parts of the hospital.

24. MACEDON had no legitimate basis for her treatment of Plaintiff and singled her out solely due to Plaintiff's age and disability.  By means of further example, around February 2019, MACEDON and PRICE held a meeting with Plaintiff in which they accused her of acting unprofessionally in staff meetings and writing emails

"unprofessionally" because Plaintiff used the word "interesting" in email to describe a situation where another employee had been untruthful about completing work. Furthermore, MACEDON reprimanded Plaintiff in this meeting by stating that she needed to "watch [herself] verbally in meetings" and further that "you write like you talk." Again, MACEDON was fully aware of Plaintiff's hearing disability during this time, yet still made the discriminatory comments.

25. Finally, during the same meeting, MACEDON and PRICE informed Plaintiff that she was no longer permitted to address any staff issues with MLH's Human Resources department. This retaliatory change was solely due to Plaintiff previously addressing concerns with MACEDON and PRICE with Human Resources.

26. MACEDON's harassment and nitpicking of Plaintiff increased to such a level that Plaintiff began treating with a psychologist from Defendants' Employee Assistant Plan ("EAP") as a result of the constant harassment.

27. During this time, MACEDON would also make comments to other MLH employees about Plaintiff "ignoring" her and not listening to her, when MACEDON was fully aware that if she was not facing Plaintiff when speaking to her, it was difficult for Plaintiff to hear her on account of her disability.

28. Around March 4, 2019, Defendants called Plaintiff to the Human Resources department for a meeting, in which they informed Plaintiff that MACEDON had complained that Plaintiff "overspeaks" her and "talks too loud." Such comments were offensive and disturbing to Plaintiff, as they clearly related to Plaintiff's hearing disability. In response, Plaintiff reiterated that MACEDON was aware of her disability.

29. Around the same time, MACEDON asked Plaintiff in words or substance if she "wanted to keep her job" to which Plaintiff responded that she absolutely intended to do so. In response, MACEDON stated that they would "have to figure out a plan" for Plaintiff to do so. Defendants also accused Plaintiff of being "dismissive" and alleged that several doctors had complained about her, yet were unwilling to provide further information about who had complained.

30. Furthermore, Defendants also discussed placing Plaintiff on a Performance Improvement Plan ("PIP") during this meeting without any legitimate reason to do so. Notably, Plaintiff was aware that another older MLH employee had recently been placed on a PIP under questionable circumstances.

31. Defendants had no legitimate motivation to question Plaintiff about her continued employment other than her age and disability.

32. Several days later, Defendants again called Plaintiff to a Human Resources meeting in which Defendants repeatedly pressured Plaintiff about whether she had recorded prior conversations with PRICE and MACEDON, and even suspended her for the remainder of the day despite Plaintiff volunteering to provide her cell phone and demonstrating that she had not done so. During that meeting, Defendants Head of Human Resources Greg Papa ("Papa") stated to Plaintiff that it "didn't matter that [she] had had a stellar career for thirty years" and that she "needed to adapt" to MACEDON's "style." (Furthermore, after Defendants' "investigation," the allegations against Plaintiff were discovered to be unfounded.)

33. Accordingly, as a result of the constant harassment and threat of being placed on a PIP for completely unwarranted reasons, Plaintiff submitted a formal complaint of harassment and discrimination related to her age and hearing disability to Defendants.

34. Approximately two weeks after making her complaint, Defendants' Human Resources department scheduled a meeting with Plaintiff, Papa, and VP Fran Cusick.

35. During that meeting, Plaintiff reiterated the numerous examples of MACEDON's age and disability-related harassment, and assured Human Resources that she was "sure" of what she had endured, in response to their questions. Furthermore, Plaintiff clearly explained how MACEDON's comments about her being "dismissive" and other comments about Plaintiff's speaking were clearly related to her disability.

36. When Papa asked Plaintiff how she wanted the situation to be resolved, Plaintiff responded that she simply wanted to return to work without being harassed. Plaintiff also requested that she be placed under supervision of the new operating room manager who was expected to begin that May instead of MACEDON, which Defendants refused to do. Incredibly, Papa still insisted on giving Plaintiff a copy of the PIP that MACEDON had prepared, which Plaintiff declined to sign.

37. Following Plaintiff's formal report of harassment and meeting with Human Resources, Defendants' discriminatory and harassing conduct temporarily lessened, but did not stop, and began to again occur frequently throughout 2019.

38. By means of example, around August, PRICE baselessly reported Plaintiff to Defendant's Human Resources department for allegedly sending an "unprofessional" email that "offended" her, which was entirely false.

39. During this time, MACEDON and PRICE also continued to ignore Plaintiff's requests for help when needed.

40. Around September 20, 2019, MACEDON issued Plaintiff's yearly performance review and requested that Plaintiff review and sign it. Upon review, Plaintiff was shocked to see that MACEDON had given her the worst review that she had ever received in her over 30 years with MLH. Specifically, MACEDON dropped Plaintiff from a 5/5 ("Exceptional") rating to a 3/5 ("Average") rating. Even more egregiously, MACEDON rated Plaintiff as a "3" in the "Goals" section that was left entirely blank (i.e., nothing from the prior year's goals was even indicated). MACEDON also included demeaning comments about Plaintiff's performance and even stated that Plaintiff needed to "improve her communication style," despite once again being fully aware of Plaintiff's disability.

41. Accordingly, Plaintiff once again went to Human Resources and informed Papa that the poor review was in direct retaliation for Plaintiff's earlier report to Defendants about the ongoing harassment and discrimination, and that she would not sign the review.

42. After attempting to get Papa to meet in person with her for over a week, he finally agreed to meet with Plaintiff and review the evaluation. Once he did so, Papa agreed that it was inadequately done and that MACEDON needed to correct the inadequacies. During that meeting, Plaintiff reiterated the substantial amount of stress that she was under within the workplace and further stated her concern of further retaliation from MACEDON for reporting the latest incident.

43. Approximately one week later, MACEDON reissued the review without blank areas, but with the same "3" rating that she had provided to Plaintiff on the original review.

44. Approximately ten (10) days after making her latest report to Human Resources, PRICE sent a text message to Plaintiff instructing her to meet in Human Resources. When Plaintiff did so, she met with PRICE and MACEDON in addition to Ally Bennett ("Bennett"), another HR Manager who was friendly with MACEDON. During this meeting, Defendants once *again* berated Plaintiff about her "ineffective communication" and perceived issues, including Plaintiff's request to have a particular doctor who spoke very quietly communicate via email so that she could fully understand her due to her disability. Accordingly, Plaintiff again stated that she was being blatantly discriminated against, to which Defendants had no response.

45. Defendants then placed Plaintiff on a PIP in direct retaliation for her report to Human Resources about MACEDON and PRICE's conduct.

46. Plaintiff was so upset and stressed by this incident that she visited her primary care physician the following Friday, who diagnosed Plaintiff with high blood pressure and tachycardia and accordingly placed her out of work for ninety (90) days, prescribed Lexapro for severe anxiety disorder, and recommended that Plaintiff seek therapy to deal with the ongoing stress from her work-related harassment.

47. Accordingly, Plaintiff's doctor submitted documentation to place Plaintiff out of work under the Family and Medical Leave Act ("FMLA"), and Plaintiff informed both MACEDON and PRICE of her medical leave and that the FMLA coordinator would contact them.

48. Plaintiff then subsequently undertook FMLA leave per her doctor's orders until returning to work around January 24, 2020 (and also applied for short-term disability leave in the meantime).

49. While Plaintiff was on leave, Defendants incorrectly withheld part of Plaintiff's pay, resulting in 127 hours for which Plaintiff was not paid.

50. Unsurprisingly, Defendants' retaliation against Plaintiff continued soon after she returned to work. Around January 27, 2020, Plaintiff was called into a meeting with Fran Cusick (Lankenau Hospital's Executive Nurse Manager) and Sean Rowland (MLH's Surgical Director). In that meeting, Defendants informed Plaintiff that her Assistant Nurse Manager position was being eliminated. Defendants informed Plaintiff that she was able to stay on as a Coordinator or Staff Nurse, but would be required to change her schedule to do so. Plaintiff was very surprised by this announcement, and requested that any guarantees regarding her pay or benefits be placed in writing, which Defendants agreed to.

51. Additionally, when Plaintiff addressed her still-unresolved issue with being incorrectly paid while on leave, Defendants dismissed Plaintiff's concerns, replying that they "didn't have anything to do with that."

52. Furthermore, during the same meeting, Defendants again brought up the wholly unjustified and retaliatory Performance Improvement Plan on which they placed Plaintiff prior to her leave.

53. Almost immediately, Plaintiff's title transferred to "Staff Nurse" with no input from Plaintiff or alternative option offered to Plaintiff. Yet again, Defendants sought to

retaliate against Plaintiff and push her out the door in a veiled attempt to cover up the years of discrimination, retaliation, and hostile work environment.

54. On or around April 2020, a mere three months after returning from her physician-mandated FMLA, and unable to continue tolerating the outright discrimination, hostile work environment, and continued retaliation, Plaintiff was constructively discharged effective May 6, 2020.

55. Accordingly, Plaintiff continues to suffer substantial emotional distress stemming from the harassment, discrimination, and retaliation that she has suffered from and continues to suffer from despite her over thirty years of service to Defendants.

56. As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

57. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

58. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting conditions.

59. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

60. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

61. The above are just some examples, of some of the discrimination, harassment, and retaliation to which Defendants subjected Plaintiff.

62. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

63. Plaintiff claims alternatively (in the event Defendants claim or that a court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.  Furthermore, in such case, Plaintiff claims that Defendant owed and breached its duty to Plaintiff to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE ADEA
## 29 U.S.C. §§ 621 *et seq*.

63. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

64. The ADEA provides in relevant part at 29 U.S.C. §623(a) that "It shall be unlawful for an employer…(1) discharge and individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's age."

65. Defendants engaged in unlawful employment practices prohibited by 29 U.S.C. §§ 621–634 by discriminating against Plaintiff because of her age.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER THE ADEA
## 29 U.S.C. §§ 621 *et seq*.

66. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

67. The ADEA provides in relevant part at 29 U.S.C. § 623(d) that "It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment…because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."

68. Defendants engaged in unlawful employment practices prohibited by 29 U.S.C. §§ 621–634 by retaliating against Plaintiff because of her opposition to Defendants' unlawful employment practices.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE ADA
## 42 U.S.C. § 12101 *et seq*.

69. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

70. Title 42 of the Americans with Disabilities Act of 1990 (Pub. L. 101-336), Chapter 126, Subchapter I, § 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in

regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

71. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff on account of her disabilities.

72. As a result, Plaintiff suffered damages.

<b>AS A FOURTH CAUSE OF ACTION<br>FOR RETALIATION UNDER THE ADA<br>42 U.S.C. § 12101 <i>et seq</i>.</b>

73. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

74. Title 42 of the Americans with Disabilities Act of 1990 (Pub. L. 101-336), Chapter 126, Subchapter IV, § 12203, states: "(a) Retaliation: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

75. Defendants engaged in an unlawful discriminatory practice by constructively discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

76. As such, Plaintiff has been damaged as set forth herein.

<b>AS A FIFTH CAUSE OF ACTION<br>FOR DISCRIMINATION UNDER THE PHRA</b>

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

78. PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

79. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her age and disability.

80. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

### AS A SIXTH CAUSE OF ACTION FOR RETALIATION UNDER THE PHRA

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

82. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

83. Defendants engaged in an unlawful discriminatory practice by constructively discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A SEVENTH CAUSE OF ACTION
### FOR AIDING AND ABETTING UNDER THE PHRA
### (As against Defendants MACEDON and PRICE)

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

85. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

86. Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory

damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Philadelphia, Pennsylvania
       May 4, 2021

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff Susan Mozeleski*

By: _____
Nathaniel N. Peckham, Esq.
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Tel. (215) 391-4790
Fax: (215) 893-5288
nathaniel@dereksmithlaw.com